# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JIMMY ROSSER, BOP Reg. No. 70559019,     Movant, | MOTION TO VACATE 28 U.S.C. § 2255 |
| v. | CRIMINAL ACTION NO. 1:16-cr-0427-AT-JKL-10 |
| UNITED STATES OF AMERICA,     Respondent. | CIVIL ACTION NO. 1:20-cv-3726-AT-JKL |

## FINAL REPORT AND RECOMMENDATION

Movant Jimmy Rosser, a federal prisoner currently confined in the United States Penitentiary in Jonesville, Virginia, has filed a *pro se* 28 U.S.C. § 2255 motion to vacate challenging his guilty plea conviction and sentence in Case No. 1:16-cr-0427-AT-JKL-10 for one count of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d) and 1963(a). The matter is before the Court on the § 2255 motion and the government's response in opposition. For the reasons stated below, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED** and that no certificate of appealability issue.

## I.   PROCEDURAL HISTORY

On October 12, 2017, a federal grand jury returned a 22-count superseding indictment against Movant and 29 other individuals, charging Movant with

racketeering conspiracy, in violation of 18 U.S.C. §§ 1961(1) and (5), 1962(d), and 1963(a) ("Count 1"); attempted racketeering murder, in violation of 18 U.S.C. §§ 1959(a)(5) and 2 ("Count 2"); conspiracy to commit racketeering murder, in violation of § 1959(a)(5) ("Count 3"); conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), 841(b)(2), and 841(b)(3) ("Count 8"); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 21").  (Doc. 33 at 14-44, 46-47, 54.)  Movant filed pretrial motions to suppress cell-site data, wiretap evidence, other evidence, and statements. (Docs. 645, 646, 648, 649.)

In the course of plea negotiations, the parties sought, and the District Court approved, the preparation of a pre-plea presentence investigation report ("PSR"). (Docs. 874, 883.)  Movant's appointed attorneys subsequently filed a motion to withdraw, stating that Movant had directed them to withdraw.  (Doc. 1028 at 1.) This Court denied the motion without prejudice based on counsels' representation that the matter had been resolved.  (Doc. 1029 at 1.)

Ultimately, prior to any evidentiary hearing on his suppression motions, Movant entered into a binding plea agreement under which he would plead guilty to Count 1, and both the defense and the government would be bound to recommend a 240-month sentence based on an agreement that (1) the applicable sentencing guidelines were U.S.S.G. §§ 2E1.1(a)(2), 2D1.1, and 2A2.1(a), (2) a three-level enhancement was warranted under § 2A2.1(b)(1) based on the victim's injuries, and (3) a two-level enhancement was warranted under § 3B1.1(c) based on Movant's role in the offense. (Doc. 1043-1 at 1, 5-6.)

At Movant's change-of-plea hearing, the District Court placed Movant under oath and inquired about his prior motion to substitute counsel. (Doc. 1365 at 3.) The Court verified that Movant had an opportunity to confer with his attorneys and wished to continue with his current representation. (*Id.* at 3-4.) Movant testified that he had a tenth-grade education, that he could read and write English, that he did not suffer from any mental illness or emotional or mental disabilities, and that he was not under the influence of any alcohol, medication, or drugs of any kind. (*Id.* at 5-6.) The Court informed Movant of the rights that he was waiving by pleading guilty, including the right to plead not guilty, the right to a trial by jury where he would be presumed innocent and the government would be required to

prove his guilt beyond a reasonable doubt, the right to be represented by counsel at all times, the right to see, hear, and cross-examine witnesses, the right to elect to or decline to testify in his own defense, and the right to compel the attendance of witnesses to testify in his defense. (*Id.* at 6-11.)  In each instance, Movant testified that he understood. (*Id.*)

The Court then explained to Movant that he was entering a binding plea agreement for a particular sentence that the Court would review and conditionally accept, and Movant testified that he understood. (*Id.* at 11-12.)  The Court directed the government to read into the record the charge to which Movant was pleading guilty and its elements. (*Id.* at 12.)  The government's attorney stated that Movant was pleading guilty to the RICO conspiracy charge in Count 1 and explained the elements of the offense that the government would be required to prove at trial. (*Id.* at 12-13.)  Movant testified that he understood what he was being charged with and that he had no disagreements with the government's recitation of the charge and its elements. (*Id.* at 13.)  Movant testified that he understood the elements of the offense, that his counsel had explained to him what the term racketeering meant in this context, and that he understood that it was a range of gang activity at issue in the racketeering charge. (*Id.*)

4

The government then summarized the evidence that it would have presented at trial, including that Movant was a member of the "Fire Line" of the Nine Trey Gangsters ("NTG") street gang, which constituted an enterprise within the meaning of 18 U.S.C. § 1961(4). (*Id.* at 14-15.) Movant held the rank of "first floor" within the NTG Fire Line, which was a leadership position within the gang tasked with overseeing rank-and-file NTG members in the field. (*Id.* at 15.) Movant was involved in some of NTG's drug distribution activities, including the distribution of marijuana and Xanax. (*Id.* at 15-16.) On April 13, 2015, Movant, at the direction of NTG leaders, shot an individual "T.B." Additionally, on February 13, 2016, Movant, at the direction of NTG leaders, attempted to kill "V.P." by shooting him multiple times. (*Id.* at 16.) Movant planned the shooting such that multiple NTG leaders would be present. (*Id.*) NTG leaders directed Movant to shoot V.P. because he had disrespected an NTG leader while in prison. (*Id.*)

Movant objected that, while he did not dispute that he shot T.B., he did not do so at the direction of NTG leaders. (*Id.* at 16-17.) Movant did not otherwise object to the factual basis, including that he shot V.P. at the direction of gang leaders, or that he was involved in NTG's marijuana and Xanax distribution. (*Id.*

at 17.)  The Court asked Movant if there was anything else in the factual basis that he disagreed with, and he replied "[n]o, ma'am."  (*Id.* at 18.)

The District Court then directed the government to inform Movant of the maximum penalties for the charged offense, and the government's attorney recited that the maximum sentence was life imprisonment and a maximum fine of $250,000.  (*Id.* at 18.)  The Court reiterated that Movant was entering a binding plea agreement for a 20-year sentence, but that, absent the Court's acceptance of that plea agreement, the Court possessed the authority to enter any sentence up to and including the statutory maximum.  (*Id.* at 18-20.)  Movant testified that he understood.  (*Id.* at 19.)  Movant's counsel noted that there had been a dispute between the parties as to whether the maximum sentence for Count 1 was 20 years imprisonment or life imprisonment, but, by entering the plea agreement, the defense was agreeing with the government's position that the maximum sentence was life imprisonment.  (*Id.* at 21-22.)  Movant testified that he understood that he was entering a binding plea for a 20-year sentence, and that he would not be allowed to withdraw his plea down the line.  (*Id.* at 22-23.)  The Court informed Movant that there was no parole in the federal prison system, and that he should

6

expect to serve at least 85 percent or more of his sentence in custody.  (*Id.* at 23-24.)
Movant testified that he understood.  (*Id.*)

Turning to the Sentencing Guidelines, the government's attorney stated that
the government had calculated Movant's guideline range as 360 months to life, if
he proceeded to trial, and 262 to 327 months' imprisonment if he were to plead in
advance of trial, based on a total offense level of 43, criminal history category of
III and a statutory-maximum sentence of life imprisonment.  (*Id.* at 25.)  The
government also indicated that its pre-plea guidelines calculation took into account
unindicted shootings that it could present as relevant conduct at sentencing.  (*Id.*)
The Court informed Movant that his guilty plea in the instant case could result in
the revocation of probation or parole in other cases, and that the sentence imposed
could run consecutively to any other sentences he may be serving, and Movant
testified that he understood.  (*Id.* at 25-26.)

The Court then instructed the government to read the terms of the plea
agreement into the record, and the government's attorney recited that Movant was
entering a binding plea agreement to plead guilty to Count 1 of the superseding
indictment, that the remaining counts would be dismissed, that no further charges
would be brought against Movant related to the charge to which he was pleading

7

guilty, and that, pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (C), the defense and government expressly recommended a 240-month sentence. (*Id.* at 27-31.) Movant verified his signature and his attorneys' signatures on the plea agreement. (*Id.* at 37-38.)

The Court asked Movant if anyone had made any promises or representations not contained in the plea agreement to induce his guilty plea, and Movant testified "[n]o, ma'am." (*Id.* at 33-34.) The Court further asked if anyone had threatened, pressured, forced, or intimidated him into pleading guilty, and Movant replied "[n]o, ma'am." (*Id.* at 34.) Again noting the prior motion to substitute counsel, the Court twice asked Movant if he was satisfied with his attorneys' services, and Movant replied that he was and that he had spoken with his attorneys and "came to a decision [him]self to move forward." (*Id.* at 34-35.) Movant further testified that he had enough time to talk with his attorneys, that there was nothing else he wished to discuss with his attorneys, that he was satisfied with his attorneys' representation, and that he wished to proceed with his guilty plea. (*Id.* at 35-36.)

Movant then pled guilty to Count 1 and testified that his plea was voluntary and of his own free will. (*Id.* at 38.) The District Court found that Movant's plea was knowingly, voluntarily, and intelligently made based on the advice of

competent counsel and that it was supported by a factual basis on every element of the offense. (*Id.* at 38-39.) Accordingly, the District Court accepted Movant's guilty plea and adjudged him guilty of Count 1. (*Id.* at 39.)

Prior to sentencing, the U.S. Probation Office prepared a final PSR. In relevant part, the PSR provided that, on February 13, 2016, Movant and four other individuals attempted to kill V.P. on the orders of NTG leadership by shooting him multiple times. (PSR ¶¶ 24(7), 91-99.) V.P. was shot three times and one of the bullets remains in his body. (*Id.* ¶¶ 98, 117.) The PSR assessed Movant a base offense level of 33 under U.S.S.G. §§ 2E1.1(a) and 2A2.1(a) because the underlying racketeering activity was assault with intent to commit murder. (*Id.* ¶ 116.) The PSR applied a three-level enhancement under U.S.S.G. § 2A2.1(b)(1)(C) because V.P. sustained serious bodily injury that was not life threatening but more than serious bodily injury. (*Id.* ¶ 117.) The PSR also applied a two-level enhancement under § 3B1.1(c) based on Movant's leadership role as a "first floor" within the NTG Fire Line gang. (*Id.* ¶ 119.) Finally, Movant received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 35. (*Id.* ¶¶ 132-33.) Based on a total offense level of 35 and criminal history category of IV, the PSR calculated Movant's guideline range as 235-293

months' imprisonment.  (*Id.* at 50.)  Neither Movant nor the government filed objections to the PSR.

At sentencing, the District Court adopted the factual findings and guideline calculations in the PSR.  (Doc. 1131 at 4.)  Following allocution, the Court formally accepted the binding plea agreement and found that the negotiated sentence was reasonable and consistent with the 18 U.S.C. § 3553(a) factors.  (Id. at 12-17.)  The Court orally sentenced Movant to 240 months' imprisonment and entered a final judgment consistent with the foregoing.  (Doc. 1131 at 17; Doc. 1099 at 1-2.) Movant did not pursue a direct appeal of his conviction and sentence, and the instant § 2255 motion followed.

## II.    28 U.S.C. § 2255 MOTION

### A.    Grounds 1, 2, & 3

In Grounds 1 and 2 of the § 2255 motion, Movant argues that his plea counsels were ineffective for failing to investigate his case, lying to him about evidence, and failing to seek an evidentiary hearing on his motions to suppress. (Doc. 1327 at 4-5.)  Specifically, Movant states that his attorneys did not investigate the issues that he pointed out to them or test ballistic evidence to see if the gun he allegedly possessed matched the bullets that harmed the victim.  (*Id.* at 5.)  Movant further alleges that his attorneys lied to him that he had been identified in a lineup

and that there were witnesses who would testify against him when, in fact, there was no lineup done and no one witnessed him shoot anyone.  (*Id.*)  In Ground 3, Movant states that his attorneys were ineffective for failing to move to suppress the gun found in a search of his girlfriend's apartment.  (*Id.* at 7.)  Movant contends that the warrantless searches of the apartment and his cell phone were unconstitutional.  (*Id.*)  Movant recounts that he asked his attorneys to pursue a suppression motion, but he was advised that it could make matters worse.  (*Id.* at 7, 5.)  In sum, Movant asserts that his attorneys were "just scaring [him] into taking the plea."  (*Id.* at 6.)

The government responds that Grounds 1, 2, and 3 of the § 2255 motion are contradicted by the record of Movant's plea colloquy.  (Doc. 1369 at 8.)  The government argues that the District Court's thorough plea colloquy established that his guilty plea was knowing and voluntary and emphasizes Movant's testimony that he wanted to proceed with his current counsel, that he was satisfied with his attorneys' representation, and that his plea was not the product of any threats or coercion.  (*Id.* at 8-10.)  The government also argues that Movant's counsels made reasonable strategic decisions to pursue plea negotiations instead of the suppression motions, and Movant has not shown that he was prejudiced.  (*Id.* at 11-12.)

11

Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings, including pre-plea claims of ineffective assistance of counsel. *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); *Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011). Thus, a defendant who enters a guilty plea can attack only "the voluntary and knowing nature of the plea." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). In order for a plea to be knowing and voluntary, the court accepting the plea must comply with Fed. R. Crim. P. 11, and, in particular, address three "core concerns" by ensuring that: (1) the guilty plea is voluntary and free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his plea. *United States v. Bell*, 776 F.2d 965, 968 (11th Cir. 1985). In evaluating the knowingness and voluntariness of a plea, the representations of the defendant at the plea hearing, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Courts apply a "strong presumption" that statements made by a defendant during the plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy

12

burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

A defendant can overcome the otherwise voluntary and intelligent character of his guilty plea only if he can establish that the advice he received from counsel in relation to the plea was not within the range of competence demanded of attorneys in criminal cases, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). *Premo v. Moore*, 562 U.S. 115, 121, 126 (2011). To make a successful claim of ineffective assistance of counsel, a defendant must show both that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In order to establish prejudice in the context of a guilty plea, a defendant must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 562 U.S. at 129 (quotations omitted). This means that "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

13

Additionally, "[c]onclusory allegations of ineffective assistance are insufficient" to warrant habeas relief. *Wilson*, 962 F.2d at 998 (quotation marks omitted).

As discussed in detail above, the District Court conducted a lengthy and thorough plea colloquy with Movant, satisfying the core concerns of Rule 11. With respect to voluntariness and lack of coercion, Movant testified that he was not threatened, pressured, forced, or intimidated into pleading guilty, that no one had made any assurances or promises not contained in the plea agreement, and that he was pleading guilty voluntarily and of his own free will. (Doc. 1365 at 33-35, 38.) As to Movant's understanding of the nature of the charge, the government read the elements of the offense out loud on the record and recited the facts it expected to prove at trial. (*Id.* at 12-16.) Movant testified that he understood the charge, and, while he objected that he did not shoot T.B. on orders of gang leaders, he agreed that the remainder of the factual basis was accurate and sufficient to support his guilty plea. (*Id.* at 17-18.) Finally, as to Movant's knowledge of the consequences of his plea, the Court ensured on multiple occasions that Movant understood that he was entering a binding plea agreement for a 240-month sentence, and the Court explained in detail the rights he would give up and the collateral consequences of his guilty plea. (*Id.* at 6-12, 18-24, 27-31.) Movant testified repeatedly that he

14

understood.  (*See id.*)  Movant's sworn statements made during the plea colloquy carry a strong presumption of truth, and Movant has not met his heavy burden of showing that they were false.  *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.

Thus, the record shows that Movant's guilty plea complied with the requirements of Rule 11 and was knowing and voluntary.  *Bell*, 776 F.2d at 968. Consequently, Movant's valid guilty plea waived any ineffective-assistance-of-counsel claim that occurred prior to the entry of his plea.  *Patti*, 337 F.3d at 1320.

Moreover, to the extent that Movant argues that his attorneys failed to investigate his case, misled him about the strength of the government's evidence, and failed to pursue his suppression motions, these claims are belied by the record. As noted above, Movant testified at least three times that he was satisfied with his attorneys' representation, that he had independently decided to move forward with his guilty plea, that he had adequate time to discuss his case with his attorneys, and that he had no other questions for his attorneys.  (*See* Doc. 1365 at 3-4, 34-36.) Movant has not presented any evidence showing that his testimony was false. *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.  Movant also has not shown that it would have been rational under the circumstances to reject the plea agreement where he was charged with four additional federal felony offenses that were

dismissed pursuant to the plea agreement. *Diveroli*, 803 F.3d at 1263. Movant's Grounds 1, 2, and 3 are due to be denied.

### B.    Ground 4

In Ground 4, Movant argues that his attorneys were ineffective at sentencing for failing to challenge the bodily-harm and leadership enhancements included in the PSR. (Doc. 1327 at 8.) Movant also contends that his base offense level should have been based on aggravated assault because "no one on [his] case stated or said anything about trying to murder or commit a murder." (*Id.*)

The government responds that Movant's Ground 4 is contradicted by his testimony during his sentencing hearing that he had reviewed the PSR with his counsel and was ready to proceed with sentencing. (Doc. 1369 at 13.) The government also argues that Movant's guidelines calculation was consistent with his guilty plea and the plea agreement. (*Id.* at 13-15.)

Section 2A2.1(b)(1)(C) of the Sentencing Guidelines provides for a three-level increase to the base offense level if the victim sustained a degree of injury that was less than "permanent or life-threatening bodily injury" but more than "serious bodily injury." U.S.S.G. § 2A2.1(b)(1)(C). The Guidelines define "permanent or life-threatening bodily injury" as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ,

or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent," and serious bodily injury as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1, comment. (n.1(K), (M)). Additionally, § 3B1.1(c) provides for a two-level increase if the defendant "was an organizer, leader, manager, or supervisor in any criminal activity." *Id.* § 3B1.1(c).

As an initial matter, Movant entered a binding plea agreement where both sides agreed to recommend a 240-month sentence based on an agreement that (1) the applicable offense guidelines were U.S.S.G. §§ 2E1.1(a)(2), 2D1.1, and 2A2.1(a), (2) Movant was subject to a three-level enhancement under § 2A2.1(b)(1), and (3) Movant was subject to a two-level enhancement under § 3B1.1(c). (Doc. 1043-1 at 6-7.) As discussed above, Movant entered into the plea agreement knowingly and voluntarily, and Movant has not shown that it would have been rational under the circumstances to reject the plea agreement where he would have faced multiple serious additional charges and as a result. *Diveroli*, 803 F.3d at 1263.

17

In any event, the factual basis for Movant's guilty plea provided that, on the orders of NTG leaders, he attempted to kill V.P. by shooting him multiple times. (Doc. 1365 at 16.)  Movant did not object to that portion of the factual basis and he has not presented any evidence showing that his sworn statements during his plea colloquy were false.  (*See id.* at 18); *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.  The PSR further provided that V.P. was shot three times and that one of the bullets remains in his body.  (PSR ¶¶ 98, 117.)  The Sentencing Court properly relied on Movant's admitted conduct in the factual basis and the PSR to determine that the three-level enhancement under § 2A1.1(b)(1)(C) was warranted.  *See United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) (holding that unobjected-to facts in the PSR are deemed admissions by the defendant upon which the district court may rely without error).  Because a bullet remains in V.P.'s body, his injuries surpassed the definition of "serious bodily injury" and fell under § 2A1.1(b)(1)(C).  *See* U.S.S.G. 1§ 1B1.1, comment. (n.1(M)).

Movant has not articulated any reason why the § 2A1.1(b)(1)(C) enhancement was unwarranted.  (*See* Doc. 1327 at 8.)  Movant's unadorned assertion that he "pointed out all the things that [were] wrong like the leadership enhancement and bodily harm," without more, is conclusory and does not warrant

relief. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations").

Additionally, the factual basis for Movant's guilty plea provided that he held the rank of "first floor" within the NTG Fire Line gang, which was "a leadership position within the gang whose primary responsibility [was] to run the rank and file NTG members in the field." (Doc. 1365 at 15.) As a result, Movant's admitted conduct also supported the two-level enhancement under § 3B1.1(c), and his attorneys were not ineffective for failing to make meritless objections. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance").

Finally, as to Movant's contention that he should have been sentenced under an "aggravated assault" guideline, U.S.S.G. § 2E1.1 is the proper guideline that corresponds with the offense of conviction. *See* U.S.S.G. § 2E1.1. Pursuant to U.S.S.G. § 2E1.1(a)(2), he was subject to a base offense level of 33 because the underlying racketeering activity to which he admitted included shooting V.P. multiple times on the orders of gang leaders. *See* U.S.S.G. §§ 2E1.1(a)(2);

2A2.1(a).  Movant's attorneys were not ineffective for failing to make meritless objections to his base offense level.  *See Bolender*, 16 F.3d at 1573.  Movant is not entitled to relief on Ground 4.

Because Movant is not entitled to relief on any of the four grounds presented in the § 2255 motion, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED**.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks

omitted).  Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.  *See id.*  If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  28 U.S.C. foll. § 2255, Rule 11(a).

## IV.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the 28 U.S.C. § 2255 motion [1327] be **DENIED** and that a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

**IT IS SO RECOMMENDED**, this 18th day of August, 2021.

_____
JOHN K. LARKINS III
United States Magistrate Judge

21